Maria E. Andrade, ISB 6445
Benjamin E. Stein, ISB 9306
ANDRADE LEGAL
P.O. Box 2109
Boise, ID 83701
(208) 342-5100 tel.
(208) 342-5101 fax
mandrade@andradelegal.com
bstein@andradelegal.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| Jose ARTEAGA-RUIZ; Lilia RUIZ-ARTEAGA; and, Jose ARTEAGA-ARTEAGA, | Civil No. 4:14-cv-61 |
| | **COMPLAINT FOR DAMAGES** |
| | [1] Federal Torts Claim Act |
| PLAINTIFFS, | |
| vs. | |
| UNITED STATES OF AMERICA | |
| DEFENDANT. | |

## I.    PRELIMINARY STATEMENT

1.  For nearly three years, Plaintiff Jose Arteaga-Ruiz, a United States citizen, lived approximately 2,300 miles away from his family in a country he barely knew after the Defendant forcibly removed him from the United States.

COMPLAINT   1

2.  Although a simple review of basic facts related to Plaintiff Jose Arteaga-Ruiz's biographic and immigration history, all of which were known to the Defendant prior to the unlawful removal, would have revealed his United States citizenship status, officers of the United States Immigration and Customs Enforcement (hereinafter "ICE"), a component agency within the United States Department of Homeland Security (hereinafter "DHS"), ordered Plaintiff Jose Arteaga-Ruiz's  detention and subsequent removal  from the United States.  Consistent with the Defendant's routine practice, ICE completed a "Record of Deportable Alien" on government-issued Form I-213, recording the facts necessary to determine that Plaintiff Jose Arteaga-Ruiz had obtained U.S. Citizenship as a matter of law under the Child Citizenship Act of 2000.  The relevant facts include: the date that Plaintiff Jose Arteaga-Ruiz obtained Lawful Permanent Resident status; the date his mother acquired U.S. Citizenship; and his birthdate.  Still, the Defendant subjected Plaintiff Jose Arteaga-Ruiz to a summary administrative removal proceeding, informing him that that the law required his removal and that once removed, he was permanently barred from ever returning to the home he has known since he was one year old.

3.  While living in Mexico, Plaintiff Jose Arteaga-Ruiz suffered serious harm and financial loss.  He was forced to live in poverty conditions without the

companionship of his family.  He was repeatedly threatened by Mexican

nationals who lived in the area, resulting in physical altercations.


4.  Plaintiffs Lilia Ruiz-Arteaga and Jose Arteaga-Arteaga are the parents of

Plaintiff Jose Arteaga-Ruiz.  Lilia Ruiz-Arteaga is a U.S. citizen, and Jose

Arteaga-Ruiz is a lawful permanent resident.  Both parents endured

emotional and economic suffering during their son's banishment from the

United States as they worried about  his safety, well-being, and ability to

survive in Mexico.  During his son's absence, Plaintiff Jose Artega-Arteaga

was hospitalized for high blood pressure and diabetes caused by the stress

and worry of his son's unlawful removal.


5.  While in Mexico, Plaintiff Jose Arteaga-Ruiz resided in the only home

available to him:  a house where his elderly grandfather lived alone.

Because of his grandfather's poor health, he was unable to speak or

otherwise engage with his grandson.  Plaintiff Jose Arteaga-Ruiz's only

other contact with family in the area included daily visits from his aunt.

Even after Plaintiff Jose Arteaga-Ruiz's return to the United States

approximately three years after his unlawful removal, all Plaintiffs carried

the burden of believing that if the Defendant found Plaintiff Jose Arteaga-

Ruiz in the United States, that he would, at a minimum, be arrested and

potentially prosecuted for violations of criminal law, subjected to up to

twenty years in jail and then deported again to Mexico.   Alternatively,
Plaintiffs understood that, at a minimum, Plaintiff Jose Artega-Ruiz could
be immediately arrested and deported again.

6.   Plaintiff Jose Arteaga-Ruiz was detained in the United States by the
Defendant from on or about November 26, 2007 through December 4,
2007, when he was forcibly removed from the United States.

7.   Plaintiff Jose Arteaga-Ruiz was ordered removed from the United States
on or about November 30, 2007, after the Defendant determined that he
had been convicted for an "aggravated felony" as defined by the
Immigration and Nationality Act (hereinafter "INA"), pursuant to 8 U.S.C.
§ 1227(a)(2)(A)(iii).

8.   At some point before the Defendant unlawfully detained and removed
Plaintiff Jose Arteaga-Ruiz, the Defendant also took the position that the
Defendant had been convicted of a crime involving moral turpitude.

9.   On or about November 30, 2007, the Defendant informed Plaintiff Jose
Arteaga-Ruiz that because his removal had been ordered after having
been convicted of an "aggravated felony" as defined by INA, that he
could never again obtain lawful permission to enter the United States.

10. Plaintiff Jose Arteaga-Ruiz returned to the United States on or about November 2010 after a nearly week-long, life-threatening journey through the desert without adequate food or water.

11. Plaintiffs Lilia Ruiz-Arteaga and Jose Arteaga-Arteaga suffered serious physical, emotional and economic hardship due to their son's unlawful removal.

12. Plaintiffs bring this action under the Federal Tort Claims Act (28 U.S.C. § 2671, *et seq.*) and 28 U.S.C. § 1346(b)(1), for money damages as compensation for loss of property and personal injuries that were caused by the negligent and wrongful acts and omissions of agents and employees of the United States Government, *inter alia*, negligence, false imprisonment, negligent infliction of emotional distress, and intentional infliction of emotional distress while acting within the scope of their offices and employment.

13. If a private person, the Defendant would be liable to Plaintiffs in accordance with the laws of Nevada for committing the acts and omissions complained of in this action.

COMPLAINT   5

## II.     JURISDICTION AND VENUE

14. This Court has jurisdiction over the subject matter of this Complaint

     under 28 U.S.C. § 1346(b).


15. On March 4, 2013, an Administrative Tort Claim was submitted to the

     Defendant.  The Defendant had one hundred-eighty (180) days, or until

     September 4, 2013, to respond to the claim for damages.  The Defendant

     failed to respond to the claim on or before September 4, 2013.  Therefore,

     the claim was denied by default.  *See* 28 U.S.C. § 2675(a).


16. Venue is proper with this District under 28 U.S.C. § 1402(b) as each

     of the Plaintiffs reside within this District.


## III.     PARTIES

17. Plaintiff Jose Arteaga-Ruiz is a 29-year-old resident of Rupert, Idaho who

     acquired U.S. Citizenship by operation of law on March 23, 2000, through

     the Child Citizenship Act of 2000.  Plaintiff Jose Arteaga-Ruiz resided in

     Las Vegas, Nevada at the time of the acts and omissions which give rise to

     this Complaint.

18. Plaintiff Lilia Ruiz-Arteaga is a 54-year-old United States Citizen who
    resides in Rupert, Idaho, and was a resident of Las Vegas, Nevada at the
    time of the acts and omissions which give rise to this Complaint.

19. Plaintiff Jose Arteaga-Arteaga is a 57-year-old lawful permanent resident
    of the United States who resides in Rupert, Idaho, and was a resident of
    Las Vegas, Nevada at the time of the acts and omissions which give rise to
    this Complaint.

20. Defendant United States of America is the appropriate defendant
    pursuant to the Federal Tort Claims Act.   28 U.S.C. § 1346(b).

### IV.   FACTUAL ALLEGATIONS

**Plaintiff Jose Arteaga-Ruiz's Citizenship Status**

21. Plaintiff Jose Arteaga-Ruiz was born on June 22, 1984 in Michoacan,
    Mexico.  His biological mother, Plaintiff Lilia Ruiz-Arteaga, is a
    naturalized United States Citizen, and his biological father, Plaintiff Jose
    Arteaga-Arteaga, is a lawful permanent resident.  Ex. 1 (Application for
    Certificate of Citizenship, Form N-600).

22. The Child Citizenship Act of 2000, Pub. L. 106-395, 114 Stat. 1631 (codified
    at INA § 320 and 8 U.S.C. § 1431), provides for the automatic acquisition

of citizenship where: (1) at least one parent of the child is a United States

Citizen, (2) the child is under the age of eighteen years old, and (3) the

child is residing in the United States pursuant to a lawful admission for

permanent residence.[1]   The regulations governing the Child Citizenship

Act of 2000 appear at 8 C.F.R. § 320.


23. The Child Citizenship Act of 2000 became effective on February 27,

2001.  Pub. L. 106-395, 114 Stat. 1631, Sec. 104.


24. A child that meets the criteria of the Act automatically acquires United

States citizenship on the date that all requirements are met.  8 C.F.R. §

320.2.


25. Plaintiff Jose Arteaga-Ruiz entered the United States on January 1, 1985,

when he was less than one year old.

---

[1] In relevant parts, the text of the Act provides:

Children born outside the United States and residing permanently in the United States;
conditions under which citizenship is automatically acquired

**(a)** A child born outside of the United States automatically becomes a citizen of the United States
when all of the following conditions have been fulfilled:
    **(1)** At least one parent of the child is a citizen of the United States, whether by birth or
    naturalization.
    **(2)** The child is under the age of eighteen years.
    **(3)** The child is residing in the United States in the legal and physical custody of the
    citizen parent pursuant to a lawful admission for permanent residence.
**(b)** Subsection (a) of this section shall apply to a child adopted by a United States citizen parent if
the child satisfies the requirements applicable to adopted children under section 1101 (b)(1) of
this title.

26. Plaintiff Lilia Ruiz-Arteaga became a United States Citizen on November 2, 1998.  Plaintiff Lilia Ruiz-Arteaga subsequently filed a family petition for her son Plaintiff Jose Arteaga-Ruiz.  Ex. 1 (Application for Certificate of Citizenship, Form N-600).

27. Plaintiff Jose Arteaga-Ruiz became a lawful permanent resident on March 23, 2000.  Ex. 1 (Application for Certificate of Citizenship, Form N-600).

28. On February 27, 2001, Plaintiff Jose Arteaga-Ruiz was sixteen years, eight months and five days old.  Plaintiff Jose Arteaga-Ruiz was also residing in the legal and physical custody of both of his biological parents, Plaintiff Lilia Ruiz-Arteaga and Plaintiff Jose Arteaga-Arteaga, in Idaho.  Ex. 1 (Application for Certificate of Citizenship, Form N-600).

29. Pursuant to the Child Citizenship Act of 2000, Plaintiff Jose Arteaga-Ruiz automatically acquired citizenship on February 27, 2001 because he satisfied all the requirements of the Act.  Such acquisition of citizenship is automatic by operation of law, and Plaintiff Jose Arteaga-Ruiz's status as a United States citizenship is not dependent upon  either a grant of a Certificate of Citizenship or formal recognition by the Defendants, DHS, or any other entity.

30. On August 1, 2012, DHS recognized that Plaintiff Jose Arteaga-Ruiz is a United States citizen by issuing him a Certificate of Citizenship, indicating that Plaintiff Jose Arteaga-Ruiz became a United States citizen on February 27, 2001. Ex. 2 (Certificate of Citizenship).

**ICE's Unlawful Arrest, Imprisonment, and Deportation of Plaintiff Jose Arteaga-Ruiz, a United States Citizen**

31. As a matter of law, "No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress."  18 U.S.C. § 4001(a).  Neither the INA nor DHS policy authorizes the detention of a United States citizen by immigration officers.  *See* 8 U.S.C. § 1101 *et seq.* Ex. 3 (Memorandum from John Morton, Assistant Sec'y for Homeland Sec., U.S. Immigration and Customs Enforcement, Superseding Guidance on Reporting and Investigating Claims to United States citizenship at 1 (Nov. 19, 2009) ("As a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a [United States citizen]") (hereinafter "Morton Memo")).

32. Yet, on December 26, 2007, ICE placed an immigration detainer on Plaintiff Jose Arteaga-Ruiz while he was detained at the Nevada Department of Corrections.  Ex. 4 (DHS-ICE Detainer-Notice of Action).

33. After he was released from state custody on November 27, 2007, ICE issued a warrant for Plaintiff Jose Arteaga-Ruiz's arrest. Ex. 5 (Warrant for Arrest of Alien). ICE then placed Plaintiff Jose Arteaga-Ruiz under arrest, and imprisoned him without bond.  Ex. 6 (Notice of Custody Determination).

34. The information regarding Plaintiff Jose Arteaga-Ruiz's immigration history, and the fact that Plaintiff Lilia Ruiz-Arteaga was a naturalized United States citizen, was available to ICE on the Record of Deportable/ Inadmissible Alien that ICE served on Plaintiff Jose Arteaga-Ruiz when he was taken into immigration custody.   Ex. 7 (Record of Deportable/Inadmissible Alien, Form I-213).

35. ICE policy itself acknowledges that, "because of the complexity of citizenship and nationality law, many [cases] may require additional investigation and substantial legal analysis."  Ex. 3 (Morton Memo at 1).

36. In violation of this policy, ICE made no inquiry into the possibility that Plaintiff Jose Arteaga-Ruiz was a United States citizen despite having the evidence of his citizenship readily available.

37. From November 26, 2007, to December 4, 2007, ICE unlawfully detained Plaintiff Jose Arteaga-Ruiz.  Ex. 5 (Warrant for Arrest of Alien), Ex. 7 (Record of Deportable/Inadmissible Alien, Form I-213), Ex. 8 (Administrative Warrant of Removal, with verification of departure, Form I-205).

38. Plaintiff Jose Arteaga-Ruiz was ordered removed through an expedited administrative removal program.   Ex. 9 (Government Response to Respondent's Statements Made for the Issuance of a Final Order of Removal).

39. The Defendant told Plaintiff Jose Arteaga-Ruiz that he was prohibited from entering, attempting to enter, or being in the United States at any time because he had been removed after having been convicted of an offense designated as an aggravated felony under the INA.  Ex. 10 (Warning to Alien Ordered Removed or Deported).

40. The Defendant further told Plaintiff Jose Arteaga-Ruiz that if he was found in the United States after he was removed, that he could be arrested and incarcerated for up to 20 years.  Ex. 10 (Warning to Alien Ordered Removed or Deported).

41. From the moment Plaintiff Jose Arteaga-Ruiz entered into the Defendant's custody, and through both his removal from the United States and his ultimate grant of a Certificate of Citizenship, Defendant never once investigated or inquired about Plaintiff Jose Arteaga Ruiz's United States citizenship status.

42. On December 4, 2007, ICE physically removed Plaintiff Jose Arteaga-Ruiz, a United States citizen, to Mexico.  Ex. 8 (Form I-205 Administrative Warrant of Removal, with verification of departure).

**Results of the Unlawful Removal to Mexico**

43. Plaintiff Jose Arteaga-Ruiz was unlawfully removed to Mexico and remained in that country for approximately three years until he returned to his family after a nearly week-long, life-threatening journey through the desert without adequate food or water.

COMPLAINT  13

44. As a direct and proximate result of the unlawful removal, Plaintiff Jose Arteaga-Ruiz suffered substantial damages, including physical pain and suffering, emotional distress and harm, loss of enjoyment of life, lost wages and other financial losses, and lost liberty.

45. Plaintiff Lilia Ruiz-Arteaga suffered substantial damages, including physical pain and inability to sleep, emotional distress and harm, and loss of enjoyment of life due to her son's unlawful removal to Mexico and banishment from the United States.

46. Plaintiff Jose Arteaga-Arteaga suffered substantial damages, including aggravation of pre-existing physical maladies, emotional distress and harm, economic loss due to supporting his son in Mexico, and loss of enjoyment of life due to the unlawful removal.

**Post-Removal DHS Actions**

47. During the time that Plaintiff Jose Arteaga-Ruiz was unlawfully removed and banished from the United States, ICE made no further inquiries into the possibility that he was a United States citizen.

48. On August 1, 2012, DHS issued a Certificate of Citizenship confirming that Plaintiff Jose Arteaga-Ruiz became a citizen on February 27, 2001,

effectively acknowledging that the entire period of his detention and the act of forcible removal was unlawful.

49. On November 21, 2013, DHS responded to the FTCA complaint filed by Plaintiffs on March 4, 2013.  Ex. 11 (Letters from DHS dated November 21, 2013, January 2, 2014 and FTCA complaint).  The DHS response was outside of the statutory period granted defendants to respond to the FTCA complaint, entitling Plaintiffs to file the instant action.  28 U.S.C. § 2675(a).

## V.    CAUSES OF ACTION

### Federal Tort Claims Act - Negligence

50. Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

51. ICE has a duty to act with reasonable care in exercising its civil arrest and detention authority, including investigating citizenship status prior to undertaking an arrest and adequately investigating the possibility of citizenship of individuals in its custody prior to removing them from the country.

52. ICE breached this duty when it imprisoned Plaintiff Jose Arteaga-Ruiz from November 26, 2007, to December 4, 2007, and expelled him from the United States without an adequate investigation of his United States citizenship.

53. ICE officers knew they were not authorized to arrest and imprison United States citizens, as ICE's civil detention authority does not extend beyond noncitizens.  Ex. 3 (Morton Memo at 1).   ICE should have known that Plaintiff Jose Arteaga-Ruiz was a United States citizen as it had all of the information available to make this determination.

54. ICE's breach of duty actually and proximately caused Plaintiff Jose Arteaga-Ruiz's unlawful arrest, detention and removal from the United States, which resulted in harm to all Plaintiffs.

55. ICE's unlawful acts and omissions caused all Plaintiffs emotional, physical, and economic harm.

56. Nevada state law imposes liability upon persons who are responsible for the care of others and do so negligently.

57. Under the FTCA, Defendant United States of America is liable for these acts and omissions.

## Federal Tort Claims Act- False Imprisonment

58. Plaintiffs incorporate by reference the allegations in all of the paragraphs above as though fully set forth here.

59. ICE intentionally confined Plaintiff Jose Arteaga-Ruiz from the moment he was released from Nevada state custody on November 26, 2007 through December 4, 2007, when he was unlawfully removed.

60. ICE's expulsion of Plaintiff Jose Arteaga-Ruiz included a  warning that he could not return for the rest of his life resulting in his confinement outside of the United States for approximately three years.  For approximately twenty-one months after his return to the United States—from the date of his return until the issuance of the Certificate of Citizenship— Plaintiff Jose Arteaga-Ruiz would have been subject to federal criminal prosecution and administrative removal because of the Defendant's acts and omissions; a situation that effectively constituted confinement during this period.

61. Plaintiff Jose Arteaga-Ruiz's detention and removal was non-consensual and without lawful privilege, as ICE's civil detention authority does not extend beyond noncitizens.

62. ICE imprisoned and removed Plaintiff Jose Arteaga-Ruiz despite having conclusive evidence of his United States citizenship.

63. ICE's unlawful acts and omissions caused all Plaintiffs emotional, physical, and economic harm.

64. Nevada state law imposes liability upon persons who are responsible for the care of others and do so negligently.

65. Under the FTCA, Defendant United States of America is liable for these acts and omissions.

**Federal Tort Claims Act- Negligent Infliction of Emotional Distress**

66. Plaintiffs incorporate by reference the allegations in all of the paragraphs as fully set forth here.

67. ICE has the duty to act with reasonable care in exercising its civil arrest and detention authority, including investigating the possibility of United States citizenship among its detainees.

68. ICE breached this duty when it imprisoned Plaintiff Jose Arteaga-Ruiz from November 27, 2007, to December 4, 2007, and expelled him from the United States without an adequate investigation of his United States citizenship.

69. ICE officers knew they were not authorized to arrest or imprison United States citizens, as ICE's civil detention authority does not extend beyond noncitizens.

70. ICE's breach of duty actually and proximately caused Plaintiff Jose Arteaga-Ruiz's unlawful arrest, detention and removal from the United States, which resulted in harm to all Plaintiffs.

71. ICE's unlawful acts and omissions caused all Plaintiffs emotional, physical, and economic harm.

COMPLAINT  19

72. Furthermore, ICE's internal guidelines instruct officers to perform
    "additional investigation and substantial legal analysis" in complex cases.
    Exhibit 3 (Morton Memo at 1).

73. ICE issued Plaintiff Jose Arteaga-Ruiz documents which contained all of
    the necessary facts for ICE to determine that he was a United States
    citizen.

74. Nevada state law imposes liability upon persons who are responsible for
    the care of others and do so negligently.

75. Under the FTCA, Defendant United States of America is liable for
    these acts and omissions.

**Federal Tort Claims Act- Intentional Infliction of Emotional Distress**

76. Plaintiffs incorporate by reference all of the allegations in the paragraphs
    above as though fully set forth here.

77. ICE's conduct was both extreme and outrageous.  ICE did not evaluate
    any possibility of United States citizenship even though all of the evidence
    could be found in the documents that it issued to Plaintiff Jose Arteaga-
    Ruiz.

COMPLAINT  20

78. In addition to unlawfully detaining Plaintiff Jose Arteaga-Ruiz, ICE
removed him and informed him that he could never re-enter the country,
asserting lifetime banishment of a United States citizen.

79. While imprisoned by ICE, Plaintiff Jose Arteaga-Ruiz suffered severe
emotional distress relating to the following circumstances, among others:
inability to work; inability to associate with family and friends; overall
loss of liberty; and the anxiety and fear of being removed to a country that
he knew nothing about.

80. ICE's wrongful conduct actually and proximately caused this emotional
distress.

81. After being unlawfully removed by ICE, Plaintiff Jose Arteaga-Ruiz
suffered severe emotional distress relating to the following circumstances,
among others:  inability to work, attend school or participate in vocational
training; separation and inability to associate with family and friends for
approximately three years; medical issues; fear of being assaulted by
Mexican nationals who believed that he was a United States citizen; and
an overall heightened anxiety based on a combination of these factors and
the practical reality of adjusting to life in Mexico, a country that he knew

nothing about.  ICE's wrongful conduct actually and proximately caused this emotional distress.

82. Plaintiff Jose Arteaga-Ruiz suffered further severe emotional distress as a result of the Defendant's actions even after his return to the United States, in that he was subject to immediate arrest and removal and faced the possibility of criminal prosecution and incarceration.

83. Plaintiff Lilia Ruiz-Arteaga suffered severe emotional distress after her United States citizen son was unlawfully removed by ICE relating to the following circumstances, among others: medical issues and inability to sleep; separation from her son; and acute anxiety provoked by concern for his safety in Mexico.

84. Plaintiff Jose Arteaga-Arteaga suffered severe emotional distress after his United States citizen son was unlawfully removed by ICE relating to the following circumstances, among others: medical issues which prompted his hospitalization; economic loss; separation from his son; and acute anxiety provoked by concern for his safety in Mexico.

85. Plaintiffs Lilia Ruiz-Arteaga  and Jose Arteaga-Arteaga suffered further severe emotional distress as a result of the Defendant's actions even after

their son, Plaintiff Jose Arteaga-Ruiz, returned to the United States, insofar

as he was subject to immediate arrest and removal and faced the

possibility of criminal prosecution and incarceration.

86. Nevada state law imposes liability upon persons who are responsible for

the care of others and do so negligently.

87. Under the FTCA, Defendant United States of America is liable for these

acts and omissions.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request relief as follows:

    a.   Trial by jury on all claims so triable;

    b.   Compensatory damages in an amount to be proven at

       trial;

    c.   Costs and reasonable attorney fees;

    d.   The right to conform the pleadings to the proof and

       evidence presented at trial; and,

    e.   Such other relief that the Court deems just and equitable.

Dated this 25th day of February 2014.

_____/S_____
Maria E. Andrade
Andrade Legal
Of Attorneys for Plaintiffs

COMPLAINT  23