UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSE ARTEAGA-RUIZ et al, | Case No. 4:14-cv-00061-BLW |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| UNITED STATES, | |
| Defendant. | |

## INTRODUCTION

The Court has before it Defendant's motion to dismiss (Dkt. 25). The motion is fully briefed and at issue. For the reasons explained below, the Court will grant the motion.

## FACTUAL BACKGROUND

The only remaining plaintiff in this lawsuit is Jose Arteaga-Ruiz.[1] He is the son of Jose Arteaga-Arteaga and Lilia Ruiz-Arteaga. Arteaga-Ruiz was born in Michoacán, Mexico on June 22, 1984, and he came to the United States in January 1985. His biological mother, Lilia Ruiz-Arteaga, became a U.S. citizen on November 2, 1998.

---

[1] Plaintiffs filed a notice of non-opposition indicating they do not wish to proceed with certain claims, leaving only Jose Arteaga-Ruiz's claims for negligence, false imprisonment, and intentional infliction of emotional distress. *See Pl.'s Notice of Non-Opposition to Def.'s Motion to Dismiss Specific Claims* at 2, Dkt. 35.

Pursuant to the Child Citizenship Act of 2000, Arteaga-Ruiz automatically acquired U.S. citizenship on February 27, 2001.  *See* 8 U.S.C. § 1431.

On October 9, 2007, Arteaga-Ruiz was in the custody of the Nevada Department of Corrections ("NDOC") for his conviction of attempted battery with substantial bodily harm.  That same day, the Department of Homeland Security ("DHS") issued a detainer to the NDOC, notifying them that an inquiry had begun as to whether Arteaga-Ruiz was subject to removal from the United States.  Around November 26, 2007, the NDOC released Arteaga-Ruiz to the custody of Immigration Customs Enforcement ("ICE") pursuant to the DHS detainer.

From November 26, 2007 to December 4, 2007 – a total of eight days – DHS detained Arteaga-Ruiz.  During that detention, an ICE agent personally served Arteaga-Ruiz with a Notice to Appear ("NTA").  *Def.'s Motion* at 2, Dkt. 18-6.  The NTA alleged Arteaga-Ruiz: (1) was neither a citizen nor national of the U.S.; (2) was both a native and citizen of Mexico; (3) became a lawful permanent U.S. resident on March 23, 2000; (4) had been convicted in Nevada for an aggravated felony and crime of violence; and  (5) had been convicted of two crimes involving moral turpitude.  *Id.* at 3.

After receiving the NTA, Arteaga-Ruiz waived many of his legal rights, including: (1) the right to legal representation; (2) the right to question witnesses; (3) the right to offer and object to evidence; and (4) the right to require the government to prove his removability.  *Id.* at 1, Dkt. 18-5.  After reading the NTA, Arteaga-Ruiz admitted that all the allegations contained therein were true and correct, and agreed that he was removable from the United States as charged on the NTA.  *Id.* at 2.  Finally, Arteaga-Ruiz requested

MEMORANDUM DECISION AND ORDER – 2

removal to Mexico, where he indicated he would not be harmed or tortured. *Id.* Arteaga-Ruiz recognized that the consequences of signing the removal order would result in his deportation from the United States, but nonetheless, submitted the order certifying that all the information was true and correct. *Id.* at 2–3. On December 4, 2007, the Honorable Ronald L. Mullins entered Arteaga-Ruiz's removal order, and that same day he was physically removed from the United States. *Compl.* at 5, Dkt. 1-8.

According to Arteaga-Ruiz, life in Mexico was difficult. *See Pl.'s First Amended Compl.* at ¶ 5, Dkt.16. After spending three years in Mexico, he returned to the United States in November 2010, following "a nearly week-long, life-threatening journey through the desert without adequate food or water." *Id.* at ¶¶ 10, 43. Upon his return to the United States, an immigration attorney notified Arteaga-Ruiz on May 10, 2011 that he acquired U.S. citizenship on February 27, 2001 under the Child Citizenship Act of 2000. *Id.* at ¶ 11. Thereafter, Arteaga-Ruiz and his parents initiated this lawsuit against the United States alleging several claims. After amending his complaint and responding to the government's motion to dismiss, Arteaga-Ruiz now limits his claims to negligence, false imprisonment, and intentional infliction of emotional distress.

## LEGAL STANDARD

To invoke a court's subject matter jurisdiction, a plaintiff needs to provide only "a short plaint statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). The plaintiff must allege facts, not mere legal conclusion, in compliance with the pleading standards established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Assuming compliance with the standards, a

plaintiff's factual allegations are accepted as true unless challenged by the defendant.  *See*
5C CHARLES ALAN WRIGHT ET AL., *Federal Practice and Procedure* § 1363, at 107 (3d
ed. 2004).

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of
subject matter jurisdiction under Rule 12(b)(1) in one of two ways.  *See Leite v. Crane
Co.*, 749 f.3d 1117, 1121 (9th Cir. 2014).  The first is known as a "facial" attack, and it
accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their
face to invoke federal jurisdiction.  *Id.* The second method is known as a "factual" attack,
and it does not assume the truth of plaintiff's allegation but instead challenges them by
introducing extrinsic evidence, requiring the plaintiff to support his jurisdictional
allegations with "competent proof."  *Id.*

It its motion, the Government assumes that the allegations in the amended
complaint are true, but challenges the sufficiency of those allegations.  *See Def's Motion*
at 1 n.2, Dkt. 18.  Although the Government brings the motion under Rules 12(b)(1) and
(6), the motion actually rests on a claim that the Court lacks subject matter jurisdiction to
hear all of Arteaga-Ruiz's claims.  *See Def.'s Reply* at 1, Dkt. 40. Therefore, the Court
will treat the motion as a facial challenge to the Court's subject matter jurisdiction.

## ANALYSIS

### 1.      Overview of the Federal Tort Claims Act

"Absent a waiver, sovereign immunity shields the Federal Government and its
agencies from suit."  *F.D.I.C. v. Meyer*, 510 U.S. 471, 474 (1994).  Courts strictly
construe waivers of sovereign immunity and resolve all ambiguities in favor of the

sovereign. *Lane v. Pena*, 518 U.S. 187, 192 (1996).  Additionally, "a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." *F.A.A. v. Cooper*, __ U.S. __, 132 S.Ct. 1441 (2012) (internal citation omitted).    It is the Plaintiff's burden to show Congress's unequivocal waiver of sovereign immunity. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994):   *Prescott v. U.S.*, 973 F.2d 696, 701 (9th Cir. 1992).

The Federal Tort Claims Act ("FTCA") represents an unequivocal, but limited, waiver of the government's sovereign immunity.  By statute, federal jurisdiction is established over civil suits for money damages against the United States:

> for injury or loss property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or commission occurred.

28 U.S.C. § 1346(b).  As the party seeking to establish jurisdiction, Arteaga-Ruiz must therefore demonstrate that Nevada law would recognize a cause of action in negligence, false imprisonment, and intentional infliction of emotional distress against a private individual for like conduct.

Congress has carved out several exceptions to the FTCA's waiver of immunity. *See* 28 U.S.C. § 2680.  One of those exceptions is the discretionary function exception, which provides that courts have no jurisdiction over any claim against the United States "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the

Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).

For the reasons discussed below, the Court concludes that Arteaga-Ruiz's claims are

barred by the discretionary function exception of § 2680(a) to the FTCA's waiver of

sovereign immunity.  Arteaga-Ruiz has thus not met his burden to establish that the

United States has waived sovereign immunity for his claims, and the Court lacks subject

matter jurisdiction.

**2.     Discretionary Function Exception to the FTCA's Waiver of Sovereign Immunity**

The "discretionary function exception" provides that the FTCA's waiver of

sovereign immunity does not extend to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  Under Ninth Circuit authority, on a motion to dismiss, "the United

States bears the burden of proving the applicability of one of the exceptions to the

FTCA's general waiver of immunity."  *Prescott v. U.S.*, 973 F.2d 696, 702 (9th Cir.

1992).

An act falls within the discretionary function exception if: (1) the challenged act

involves a "matter of choice," and (2) the judgment "is of a kind that the discretionary

function was designed to shield."  *Id.* at 703 (quoting *Berkovitz v. U.S.*, 486 U.S. 531, 536

(1988)).  Both prongs must be satisfied for the discretionary function exception to apply.

*Id.* However, governmental conduct cannot be discretionary if it violates a legal

mandate. *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000)

Regarding the first prong of the analysis, "the challenged action [must be] a matter

of choice for the acting employees . . . ." *Id.* The "nature of the conduct," not the "status

of the actor" governs whether the exception applies. *Id.* Under the second prong, for the

discretionary exception to apply, "the United States must prove that each and every one

of the alleged acts of negligence (1) involved an element of judgment and (2) the

judgment was grounded in social, economic, or political policy." *Id.*

**3.     Plaintiff's Negligence, False Imprisonment, and Negligent Infliction of
         Emotional Distress Claims**

A threshold issue to be determined in the first prong of the analysis for the

discretionary function exception is to identify precisely what conduct is challenged in

Arteaga-Ruiz's negligence, false imprisonment, and intentional infliction of emotional

distress claims. In his First Amended Complaint, Arteaga-Ruiz alleges that ICE acted

negligently in "imprison[ing] him from November 26, 2007 to December 4, 2007, and

expell[ing] him from the U.S. without adequate investigation of his U.S. citizenship."

*First Amended Compl.* at ¶ 52, Dkt. 16. Arteaga-Ruiz further alleges that ICE committed

tortious conduct by arresting and deporting him because it "should have known that [he]

was a U.S. citizen as it had all of the information available to make this determination."

*Id.* at ¶ 53.

In his false imprisonment claim, Arteaga-Ruiz alleges immigration officers

"unlawfully confining Plaintiff Jose Arteaga-Ruiz from November 26, 2007 through

December 4, 2007." *Id.* at ¶ 60.  Arteaga-Ruiz also alleges in his false imprisonment

claim that the United States acted tortuously by deporting him to Mexico with the

"warning that he could not return for the rest of his life resulting in his confinement

outside of the U.S. for three years." *Id.* at ¶ 61.  Further, in his false imprisonment claim,

Arteaga-Ruiz alleges that after his return to the United States the Government

"effectively" confined him by having him believe he could be the "subject of federal

criminal prosecution and administrative removal." *Id.*

       In his intentional infliction of emotional distress claim, Arteaga-Ruiz alleges that

ICE's conduct was both extreme and outrageous because "even though ICE itself

recorded nearly all of the information" necessary to ascertain Arteaga-Ruiz's derivative

citizenship status, it failed to do so.  *Id.* at ¶ 79.  He further alleges, "ICE removed and

informed him that he could never re-enter the country, asserting a lifetime banishment of

a U.S. citizen." *Id.* at ¶ 80.

       At their core, Arteaga-Ruiz's claims for negligence, false imprisonment and

intentional infliction of emotional distress all stem from ICE's allegedly negligent

investigative activity concerning his immigration status, which led to his week-long

detention and removal from the United States to Mexico.

       Addressing the first prong of the test – whether the challenged conduct was

discretionary – it is well established that "decision[s] [on] how to investigate, who to

investigate, and how to present evidence" are considered discretionary conduct.  *Sabow v.*

*U.S.*, 93 F.3d 1445, 1452 (9th Cir. 1996).[2]  Thus, the ICE agents' conduct during their investigation of Arteaga-Ruiz's immigration status, the conclusions drawn from their investigation, and the decision to remove him, are generally considered discretionary conduct.

Arteaga-Ruiz argues that the ICE agents' conduct falls outside the discretionary function exemption because "Congress has specifically stated that ICE has no statutory authority to arrest, detain or remove a United States citizen . . . ."  *Pl.'s Resp.* at 3, Dkt. 34.  Indeed, "governmental conduct cannot be discretionary if it violates a legal mandate."  *Nurse v. U.S.*, 226 F.3d 996, 1002 (9th Cir. 2000).  Of particular relevance here, the Ninth Circuit has specifically recognized that "the government must *first* present clear, convincing, and unequivocal evidence of foreign birth," before the burden "shifts to the alien to show time, place, and manner of entry."  *Murphy v. I.N.S.*, 54 F.3d 605, 609 (9th Cir. 1995) (emphasis in original).  In other words, once Arteaga-Ruiz admitted to being born in Mexico, the burden of persuasion shifted to him to prove the time, place, and manner of his entry.  *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980).

---

[2] S*ee, e.g.*, *Wright v. U.S.*, 719 F.2d 1032, 1035 (9th Cir. 1983) (The decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability."); *Mirmehdi v. U.S.*, 689 F.3d 975, 984 (9th Cir. 2011) ("Because the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy, and because [Plaintiffs] do not allege that this decision itself violated the Constitution, it falls within this exception."); *Sutton v. U.S.*, 819 F.2d 1289, 1295 (5th Cir. 1987) (concluding "decisions on when, where, and how to investigate and whether to prosecute" are considered discretionary conduct); *Mesa v. U.S.*, 123 F.3d 1435, 1438 (11th Cir. 1997) ("We readily conclude that the decisions regarding how to locate and identify the subject of an arrest warrant and regarding whether the person apprehended is in fact the person named in the warrant are discretionary in nature and involve an element of judgment or choice."); *Smith v. U.S.*, 375 F.2d 243, 247–48 (5th Cir. 1967) ("The discretion of the Attorney General in choosing whether to prosecute or not to prosecute, or to abandon a prosecution already started, is absolute.").

Here, an ICE agent personally served Arteaga-Ruiz with an NTA alleging he: (1) was not a citizen or national of the United States; (2) was a native and citizen of Mexico; (3) had been convicted of an aggravated felony and crime of violence[3]; and (4) had been convicted of two crimes involving moral turpitude. *Def.'s Motion*, *supra* at 1.  After reading the NTA, Arteaga-Ruiz admitted all the allegations were true and correct, and agreed he was removable as charged therein. *Id.* at 2.

By statute, an ICE agent has the "power" to arrest someone in the United States if the agent has "reason to believe" that the person is in the United States in violation of any immigration laws or regulations . . . ." 8 U.S.C. § 1357(a)(2).  The only basis asserted by Arteaga-Ruiz to support his negligence claim is failing to determine from various documents that Arteaga-Ruiz was entitled to derivative citizenship.  Arteaga-Ruiz does not assert any claim of intentional misconduct on behalf of the ICE agents, and thus, this is essentially a claim that the ICE agent failed to adequately perform a discretionary duty, which falls squarely within the discretionary function exception.  Accordingly, the ICE agents' decision to issue the NTA was a matter of judgment, and the first prong of the discretionary function exception test is satisfied.

The Court next turns to whether the agents' decisions were the kind the discretionary function exception was designed to shield. *Berkovitz*, *486* U.S. at 536.  "The basis for the discretionary function exception was Congress' desire to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic,

---

[3] By statute, an alien who has been convicted of an aggravated felony and removed from the United States is forever bared from reentry.  *See* 8 U.S.C. § 1182(a)(9)(A)(i).

and political policy through the medium of an action in tort." *Id.* at 536–37.  (quoting *U.S. v. Varig Airlines*, 467 U.S. 797, 814 (1984)).  Properly construed, the exception "protects only governmental actions and decisions based on considerations of public policy." *Id.* at 537.  *See Dalehite v. U.S.*, 346 U.S. 15, 36 (1953) ("Where there is room for policy judgment and decision there is discretion").

ICE is a federal agency tasked with enforcing "federal laws governing border control, customs, trade and immigration to promote homeland security and public safety."[4]  ICE is charged with enforcing more than 400 federal statutes.[5]  More specifically, ICE is tasked with "preventing terrorism and combating the illegal movement of people and goods."[6]  The Ninth Circuit has recognized, "[i]nvestigations by federal law enforcement officials . . . clearly require investigative officers to consider relevant political and social circumstances in making decisions about the nature and scope of a criminal investigation." *Sabow*, 93 F.3d at 1453.  Of particular importance here, the Ninth Circuit has acknowledged, "the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy . . . ." *Mermindi v. U.S.*, 689 F.3d 975, 984 (9th Cir. 2001).  *See also Douglas v. U.S.*, 796 F. Supp. 2d 1354, 1369 (M.D. Fla. 2011) ( "Operating with limited resources, ICE must weigh various policy

---

[4] Who We Are Overview, U.S. Immigration & Customs Enforcement, http://www.ice.gov/about (last visited Oct. 1, 2015).
[5] What We Do Overview, U.S. Immigration & Customs enforcement, http://www.ice.gov/about (last visited Oct. 1, 2015).
[6] *Id.*

MEMORANDUM DECISION AND ORDER – 11

considerations in deciding which suspected aliens to detain, how to detain them, and how to investigate claims of citizenship by detained aliens.").

The ICE agents' discretionary conduct in investigating Arteaga-Ruiz's immigration status, analyzing the information received, and in deciding whether to issue an NTA charging Arteaga-Ruiz were susceptible to policy analysis.  Thus, the second prong of the discretionary function exception has been satisfied.  Accordingly, Artega-Ruiz's negligence, false imprisonment, and intentional infliction of emotional distress claims are barred by the discretionary function exception to the FTCA's waiver of sovereign immunity.

**ORDER**

**IT IS ORDERED:**

1.  Defendant's Motion to Dismiss (Dkt. 25) is **GRANTED.**

2.  The Court will enter a separate judgment in accordance with Fed. R. Civ. P. 58.

DATED: February 22, 2016

B. Lynn Winmill
Chief Judge
United States District Court